UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBAL NAPS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON NEW ENGLAND INC., d/b/a<br>VERIZON MASSACHUSETTS,<br><br>Defendant. | Civil Action No. 05-10079-MLW |

## ANSWER AND COUNTERCLAIM

Verizon New England Inc., d/b/a Verizon Massachusetts ("Verizon MA"), by its undersigned attorneys, hereby answers the Complaint of Global NAPs, Inc. ("GNAPs") filed with this Court on January 12, 2005. All allegations not specifically admitted are denied.

## AFFIRMATIVE DEFENSES

### First Defense

GNAPs' Complaint is barred for failure to state a claim upon which relief can be granted. Under applicable federal law, and the terms of the parties' interconnection agreement, GNAPs is not entitled to the relief it seeks in its Complaint. Accordingly, GNAPs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### Second Defense

GNAPs' Complaint is barred by the doctrine of primary jurisdiction, since its claims are subject to a binding interconnection agreement entered into pursuant to section 252 of the Telecommunications Act of 1996, 47, U.S.C. § 101, *et seq.* ("1996 Act"). Federal law provides that state commissions, such as the Massachusetts Department of Telecommunications and Energy ("DTE"), have primary jurisdiction to review, approve, interpret, and enforce

interconnection agreements. Since GNAPs has failed to raise the matters in its Complaint with the DTE in the first instance, this case is not ripe for review by this Court and should be dismissed.

### Third Defense

GNAPs' claims are without merit and, in any case, are subject to setoff in the amounts described in Verizon MA's Counterclaim filed herewith.

### Fourth Defense

Verizon MA reserves the right to assert additional affirmative defenses pursuant to Fed. R. Civ. P. 8 to the extent they become applicable.

## ANSWERS TO SPECIFIC ALLEGATIONS

In response to the specific allegations in GNAPs' Complaint, Verizon MA states as follows:

1. Verizon MA does not dispute the allegations contained in this paragraph.

2. Verizon MA admits it is a New York corporation that maintains a place of business at 185 Franklin Street, Boston, Massachusetts and is an incumbent local exchange carrier under the 1996 Act.

3. Verizon MA denies the allegations in this paragraph to the extent they imply that GNAPs is entitled to receive payments from Verizon MA for telephone calls by Verizon MA's customers to GNAPs' Internet Service Provider ("ISP") customers pursuant to the 1996 Act, or the rules and regulations of the Federal Communications Commission ("FCC").

Further answering, Verizon MA states that GNAPs' and Verizon MA's obligations with respect to compensation for ISP-bound traffic are set forth in, and governed by their currently effective interconnection agreement. A copy of that interconnection agreement (hereinafter

referred to as the "GNAPs/Verizon MA Interconnection Agreement") is attached as Exhibit 1. The GNAPs/Verizon MA Agreement was effective as of January 17, 2003. Section 8.1 of the Interconnection Attachment to the GNAPs/Verizon MA Interconnection Agreement provides in relevant part that the "the Parties' rights and obligations with respect to any intercarrier compensation that may be due in connection with their exchange of Internet Traffic shall be governed by the terms of the FCC Internet Order and other applicable FCC orders and regulations; and, (b) a Party shall not be obligated to pay any intercarrier compensation for Internet Traffic that is in excess of the intercarrier compensation for Internet Traffic that such Party is required to pay under the FCC Internet Order and other applicable FCC orders and FCC Regulations." Exhibit 1 (Interconnection Attachment, ¶ 8.1).

The referenced "FCC Internet Order" refers to the "Order on Remand and Report and Order, *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP Bound Traffic*, FCC 01-131, CC Docket nos. 96-98 and 99-68 (adopted April 18, 2001)" (hereinafter referred to as "*ISP Remand Order*"). Exhibit 1 (Glossary, Section 2.36). In Paragraph 80 of the *ISP Remand Order*, the FCC stated that the interim *rate* caps it established in that order were precisely that – caps on intercarrier compensation for ISP-bound traffic. Paragraph 80 of the *ISP Remand Order* provides that the FCC's prescribed rates do not apply and have no effect if a state has ordered that such traffic be exchanged on a bill and keep basis "or has otherwise not required payment of compensation for ISP-bound traffic." The DTE has not required that LECs pay compensation for exchange of ISP-bound traffic under interconnection agreements entered into during the interim compensation regime established in *ISP Remand Order*. In its order in D.T.E. 97-116-F, the DTE affirmed its position on compensation for ISP-bound traffic as follows:

> For reasons discussed below, we conclude that the [DTE's] policy relating to compensation for ISP-bound traffic described in the 97-116-C Order prevails throughout the FCC's interim period (subject to the FCC's "mirroring rule," discussed below) unless an alternative compensation arrangement is voluntarily negotiated and agreed upon by the parties…In D.T.E. 97-116-C at 27-31 and n.31, the Department ordered that payment of reciprocal compensation was not required for ISP-bound traffic and defined ISP-bound traffic as traffic exceeding a 2:1 ratio of terminating and originating traffic. *Therefore, pursuant to the FCC's clear directive, because we have not required payment of compensation for this type of traffic, the interim rates set forth in the [ISP Remand Order] have no effect in Massachusetts, and the Department's policy prevails for both existing and re-negotiated interconnection agreements throughout the interim period."*

(Emphasis added). Since the Parties' obligations with respect to compensation for ISP-bound traffic are subject to Paragraph 80 of the *ISP Remand Order* (among other applicable provisions), and the DTE has not required payment for ISP-bound traffic, GNAPs is not entitled to receive payments for ISP-bound traffic in Massachusetts, but rather, federal law and the terms of the GNAPs/Verizon Agreement provide that such traffic continue to be exchanged on a bill-and-keep basis. The *CoreComm Order* (*Petition of Core Communications, Inc. for Forebearance Under 47 U.S.C. § 160(c) from Application of the ISP Remand Order*, WC Docket No. 03-171 (rel. Oct. 18, 2004)) does not alter the application of the rate cap established by the FCC in the *ISP Remand Order*.

A further reason that GNAPs is not entitled to the relief it seeks in this Complaint is the fact that, on information and belief, the traffic for which GNAPs is seeking relief is Virtual NXX ("VNXX") traffic, otherwise referred to as Virtual Foreign Exchange (or "V/FX") traffic. VNXX is the practice of assigning a customer physically located in one local calling area a telephone number rated for a different local calling area. GNAPs uses this network service arrangement in connection with its ISP-customers in Massachusetts. *See* Exhibit 1 (GNAPs/Verizon MA Interconnection Agreement, Interconnection Attachment, Section 7.3.8 (defining "V/FX traffic")). *The GNAPs/Verizon MA Interconnection Agreement expressly*

4

*provides that GNAPs must pay Verizon access charges when GNAPs uses V/FX to deliver calls to its ISP customers. Id.* at Section 6.5.1. In addition to requiring GNAPs to pay Verizon access charges where a GNAPs customer receives V/FX service, Section 6.5.1 of the Interconnection Attachment to the GNAPs/Verizon Interconnection Agreement expressly provides that GNAPs "shall not bill Verizon Reciprocal Compensation, *intercarrier compensation or any other charges for calls placed by Verizon's Customers to such GNAPs Customers." In short, the language of the interconnection agreement expressly prohibits GNAPs from recovering the charges it seeks to recover in this case.*

4. Verizon MA admits the allegations contained in this paragraph.

5. Verizon MA admits the allegations contained in this paragraph.

6. Verizon MA admits the allegations contained in this paragraph.

7. Verizon MA admits the allegations contained in this paragraph.

8. Verizon MA admits the allegations contained in the first sentence of this paragraph. Verizon also admits that, for the most part, interconnection agreements govern the procedures for, and details of interconnection and that those agreements must comply with the 1996 Act.

9. Verizon MA admits the allegations contained in this paragraph.

10. Verizon MA denies the allegations contained in this paragraph to the extent GNAPs suggest those allegations describe a general rule.

11. Verizon MA denies the allegation in this paragraph to the extent it suggests that GNAPs is entitled to the relief it seeks in its Complaint.

12. In response to this paragraph, Verizon MA states that the referenced *ISP Remand Order* speaks for itself, and refers the Court to that order for its meaning and effect. To the

5

extent further answer is deemed required, Verizon MA denies that GNAPs has accurately described the meaning and effect of that order.

13.  In response to this paragraph, Verizon MA states that the referenced paragraph 82 of *ISP Remand Order* speaks for itself, and refers the Court to that order for its meaning and effect. Verizon MA denies that the cited language supports GNAPs position in its Complaint.

14.  This paragraph consists of interpretations of law, to which no response is required. To the extent a response is deemed required, Verizon MA states that the referenced paragraph 82 of *ISP Remand Order* speaks for itself, and refers the Court to that order for its meaning and effect.

15.  Verizon MA denies the allegations in this paragraph to the extent they suggest that GNAPs is entitled to the relief it seeks in the Complaint. Verizon MA admits that the claim in GNAPs' Complaint is not governed by an interconnection agreement that was in effect at the time the FCC issued the *ISP Remand Order*, but denies that that fact has any relevance with respect to the issues in dispute. Further answering, Verizon MA states that GNAPs' claims are governed by the GNAPs/Verizon MA Interconnection Agreement that took effect on January 27, 2003. *See* attached Exhibit 1.

16.  In response to this paragraph, Verizon MA states that the referenced *ISP Remand Order* speaks for itself, and refers the Court to that order for its meaning and effect.

17.  In response to this paragraph, Verizon MA states that the referenced *ISP Remand Order* speaks for itself, and refers the Court to that order for its meaning and effect.

18.  The "allegations" in this paragraph are legal argument to which no answer is required. In further response to this paragraph, Verizon MA states that the referenced *ISP Remand Order* speaks for itself, and refers the Court to that order for its meaning and effect.

19. In response to this paragraph, Verizon MA states that the referenced *CoreComm Order* speaks for itself, and refers the Court to that order for its meaning and effect. Verizon MA admits that a true and accurate copy of the *CoreComm Order* is attached as Exhibit A to GNAPs' Complaint.

20. In response to this paragraph, Verizon MA states that the referenced *CoreComm Order* speaks for itself, and refers the Court to that order for its meaning and effect. Further answering, Verizon denies that the rate cap currently in effect in Massachusetts is $.0007/minute. As discussed above in Verizon MA answer to paragraph 3 of GNAPs' Complaint, since the DTE has not required the compensation for ISP-bound traffic in Massachusetts during the period in which the *ISP Remand Order* has been in effect, carriers in Massachusetts have exchanged such traffic on a bill-and-keep basis, which is effectively a rate of *zero*. The *CoreComm Order* did not alter this rate, and GNAPs is not entitled to additional or different compensation in Massachusetts as a result of the *CoreComm Order*.

21. Verizon MA denies the allegations contained in this paragraph. Further answering, Verizon MA states that the referenced *CoreComm Order* speaks for itself, and refers the Court to that order for their meaning and effect.

22. Verizon MA admits that almost all of the traffic that Verizon delivers to GNAPs is ISP-bound traffic.

23. Verizon MA admits that it has delivered traffic to GNAPs since October 8, 2004, and that GNAPs routes most of that traffic to Internet Service Providers, but denies that federal law entitles GNAPs to the compensation it seeks in its Complaint.

24. Verizon MA admits that in October, 2004, GNAPs sent Verizon MA an invoice for $150,956.00 that purported to be for Verizon-originated traffic and that GNAPs claimed it

was entitled to payment for such traffic at a rate of $.0007/minute. Verizon MA denies that federal law provides that the "applicable rate" in Massachusetts is $.0007/minute, since Massachusetts is among the states that has determined that, in the absence of a contrary agreement, compensation for ISP-bound traffic shall be on a "bill and keep" basis. The *ISP Remand Order* expressly provided that the $.0007/minute rate did not apply in states which had determined that traffic would be exchanged on a bill and keep basis, or otherwise not required the payment of reciprocal compensation for such traffic. The *CoreComm Order* did not alter the rate cap in Massachusetts.

25. Verizon MA admits the allegations contained in this paragraph.

26. Verizon MA admits the allegations contained in this paragraph. Further answering, Verizon MA states that it has not paid GNAPs the $6,274.00 because GNAPs has failed to pay Verizon MA for approximately $40 million in access charges, which GNAPs owes Verizon MA under the parties' currently-effective interconnection agreement, as discussed in Verizon MA's Counterclaim below.

27. In response to this paragraph, attached as Exhibit 2 is a copy of the referenced November 23, 2004 letter from Verizon MA to GNAPs which reflects Verizon MA's initial response with respect to this matter. Verizon MA herein incorporates Exhibit 2, as if fully set forth herein.

28. Verizon MA denies the allegations contained in this paragraph.

29. Verizon MA does not dispute the allegations contained in this paragraph, but denies that they are relevant to this case.

30. Verizon MA denies the allegations contained in this paragraph.

31.     Verizon MA admits that in December, 2004, GNAPs sent Verizon MA an invoice for $196,612.00 that purported to be for Verizon-originated traffic and that GNAPs claimed it was entitled to payment for such traffic at a rate of $.0007/minute. Verizon MA denies that federal law provides that the "applicable rate" in Massachusetts is $.0007/minute, since Massachusetts is among the states that has determined that, in the absence of a contrary agreement, compensation for ISP-bound traffic would be on a "bill and keep" basis. The *ISP Remand Order* expressly provided that the $.0007/minute rate did not apply in states which had determined that ISP-bound traffic would be exchanged on a bill and keep basis, or otherwise not required the payment of reciprocal compensation for such traffic. The *CoreComm Order* expressly provides that it did not alter the rate caps.

32.     Verizon MA admits the allegations contained in this paragraph.

33.     Verizon MA admits the allegations contained in this paragraph. Further answering, Verizon MA states that it has not paid GNAPs the $7,450.00 because GNAPs has failed to pay Verizon MA for over $40 million in access charges, which GNAPs owes Verizon MA under the terms of the GNAPs /Verizon MA Interconnection Agreement, as discussed in Verizon MA's Counterclaim described below.

34.     In response to this paragraph, attached as Exhibit 3 is a copy of the referenced December 21, 2004 letter from Verizon MA to GNAPs which reflects Verizon MA's initial response with respect to this matter. Verizon MA herein incorporates Exhibit 3, as if fully set forth herein.

35.     In response to this paragraph, Verizon MA states that its December 21, 2004 letter speaks for itself, and refers the Court to that letter (attached as Exhibit 3) which is herein incorporated by reference.

36. Verizon MA denies the allegations contained in this paragraph.

37. Verizon MA denies the allegations contained in this paragraph.

38. Verizon admits the allegation contained in this paragraph.

39. Verizon MA admits that it has not paid GNAPs the amounts it sought in its December 22, 2004 written demand, but denies that GNAPs is entitled to such payments.

40. Verizon MA herein incorporates by reference and reasserts its foregoing responses.

41. Verizon MA denies the allegations contained in this paragraph.

42. Verizon MA herein incorporates by reference and reasserts its foregoing responses.

43. Verizon MA denies the allegations contained in this paragraph.

44. Verizon MA herein incorporates by reference and reasserts its foregoing responses.

45. Verizon MA admits the allegations contained in this paragraph. Further answering, Verizon MA states that the controversy arises as a result of a disagreement between the parties regarding the meaning and effect of the GNAPs/Verizon MA Interconnection Agreement and the application of federal law under the terms of that interconnection agreement.

46. Verizon MA admits that GNAPs seeks a declaratory judgment or decree under 28 U.S.C. § 2201 declaring the respective rights and obligations of the parties, and a determination from this Court that since October 8, 2004, Verizon MA must pay GNAPs $.0007/minute for ISP-bound telephone calls, but denies that GNAPs is entitled to such relief.

WHEREFORE, Verizon MA prays that GNAPs Complaint be dismissed, that Verizon MA have its costs arising out of and relating to this action, including attorneys' fees, and that the Court award Verizon MA such other relief as is just and reasonable.

## COUNTERCLAIM OF VERIZON MASSACHUSETTS

Having fully answered GNAPs' Complaint, defendant Verizon MA hereby files its Counterclaim and states as follows:

### Nature of the Action

1. Verizon MA brings this Counterclaim for declaratory and injunctive relief and breach of contract, to recover over $42 million dollars in charges that GNAPs owes Verizon MA under the terms of the parties' currently effective interconnection agreement for Virtual NXX or "VNXX" calls delivered by Verizon MA to GNAPs' Internet Service Provider ("ISP") customers. Despite the fact that the plain and unambiguous language of the parties' interconnection agreement provides that GNAPs *shall* pay Verizon access charges for such calls and that Verizon MA billed GNAPs for such calls in accordance with the terms of that agreement, GNAPs has failed to make even a single payment for such traffic for invoices covering a period from January 2003 through February, 2005. Verizon MA seeks declaratory and injunctive relief from this Court to compel GNAPs to pay these substantial overdue amounts without further delay, including applicable late payment charges, reasonable costs, and attorneys' fees.

### Parties, Jurisdiction, and Venue

2. Counterclaimant Verizon MA is a New York corporation with a principal place of business at 185 Franklin Street, Boston, Massachusetts. Verizon MA is a common carrier that

11

provides local telephone service in Massachusetts and is a "Local Exchange Carrier", as that term is defined by Section 251(h) of the 1996 Act. 47 U.S.C. § 251(h).

3. Counterclaim Defendant GNAPs is a Delaware corporation with a principal place of business at 10 Merrymount Road, Quincy, Massachusetts. GNAPs Complaint at ¶ 1. On information and belief, GNAPs is a carrier authorized to provide telecommunications services in Massachusetts. GNAPs is a party to an interconnection agreement with Verizon MA, that was arbitrated and approved by the DTE and became effective on January 27, 2003 ("GNAPs/Verizon MA Interconnection Agreement). *See* attached Exhibit 1.

4. This is a civil action arising under the 1996 Act, a law of the United States. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331. To the extent that any of the claims set forth in this Counterclaim depend on state law, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

5. The value of Verizon MA's rights at issue in this Counterclaim exceeds $75,000, exclusive of interest and costs.

6. Venue is this District is proper pursuant to 28 U.S.C. § 1391(b). The interconnection agreement at issue in this proceeding was arbitrated and approved by the DTE in this District.

**Background**

7. Congress' principal purpose in passing the 1996 Act was to increase competition in the market for local telephone services. *See* 1996 Act, Pub. L. No. 104-104, 110 Stat. 56, 56; *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 370, 119 S. Ct. 721, 726 (1999).

8. To promote such competition, the 1996 Act imposes a series of obligations on telecommunications carriers. Among other things, incumbent local exchange carriers ("ILECs")

12

like Verizon MA, and competitive local exchange carriers must interconnect their networks, so that their customers can call each other. 47 U.S.C. § 251(a)(1). 47 U.S.C. § 251(c)(2)(D) requires ILECs to interconnect with CLECs upon "rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions of the agreement and the requirements of [section 251] and section 252." The 1996 Act provides a comprehensive framework within which a CLEC may obtain an interconnection agreement with an ILEC.

9. One avenue for the CLEC to obtain an interconnection agreement is through negotiation and, to the extent negotiation fails, arbitration before the state commission. 47 U.S.C. § 252. In resolving an arbitration, a state commission must, among other things, ensure that such resolution and conditions meet the requirements of section 251 of the 1996 Act. 47 U.S.C. § 252(c)(1). When a state commission makes a determination under section 252 of 1996 Act, "any party aggrieved by such determination may bring an action in an appropriate Federal District Court to determine whether the agreement meets the requirements of section 251." 47 U.S.C. § 252(e)(6).

10. On July 30, 2002, GNAPs filed a petition with the DTE for binding arbitration pursuant to section 252(b) of the 1996 Act to resolve a number of disputes that arose between GNAPs and Verizon MA in the course of negotiating a new interconnection agreement to replace one that had expired.

11. In the course of the arbitration, the DTE addressed various disputed issues regarding the appropriate compensation due between Verizon MA and GNAPs related to Virtual NXX or "V/FX" calls. V/FX calls are those where the called customer has an exchange ("NXX") code — i.e., a telephone number — that does not correspond to the exchange in which that customer is physically located.

13

12. The DTE entered a final binding arbitration order addressing compensation for V/FX calls and other issues on December 12, 2002. A copy of that order is attached as Exhibit 4. In that order, the DTE held that where GNAPs used V/FX to serve its ISP customers and Verizon MA's network was used to originate such calls, that Verizon MA is entitled to receive "applicable access charges" from GNAPs. The parties were directed by the DTE to file a final interconnection agreement that reflected the DTE's determinations in the order, including those relating V/FX traffic.

13. The parties ultimately executed an agreement, which took affect on January 27, 2003, that included provisions reflecting the DTE's rulings. While the GNAPs/Verizon MA Interconnection Agreement has an expiration date of January 16, 2005, by its terms, it remains in effect until it is terminated or cancelled according to its terms; neither of which has occurred. Therefore, since January 27, 2003 that agreement has been and remains in full force and effect.

14. The GNAPs/Verizon MA Interconnection Agreement requires that GNAPs pay Verizon MA originating access charges in Massachusetts for Verizon originated V/FX traffic. Section 7.3.8 of the Interconnection Attachment to the agreement states that "GNAPs shall pay Verizon's originating access charges for all V/FX Traffic originated by a Verizon Customer, and GNAPs shall pay Verizon's terminating access charges for all V/FX Traffic originated by a GNAPs Customer."

15. Section 6.5 of the Interconnection Attachment of the Agreement imposes an obligation on GNAPs to provide data and studies to Verizon, and to cooperate with Verizon, to ensure that Verizon "is duly compensated for the transport and/or switching of GNAPs V/FX Traffic, including payment to Verizon of access charges for such V/FX Traffic" and prohibits

GNAPs from providing V/FX services to its customers unless it provides Verizon with data necessary to impose access charges on V/FX Traffic.

16. Section 6.5.1 of the Interconnection Attachment also expressly provides that GNAPs "shall not bill Verizon Reciprocal Compensation, *intercarrier compensation or any other charges for calls placed by Verizon's Customers to such GNAPs Customers*" (*i.e.*, those customer that GNAPs serves using V/FX arrangements)

17. Verizon MA has billed GNAPs for access charges associated with V/FX related traffic in accordance with the terms of the interconnection agreement for periods covering from January 2003-December 2004. GNAPs has failed to pay Verizon MA *any* of the access charges for services Verizon MA provided to GNAPs in connection with its provision of V/FX services to its customers. As of February 23, 2005, the past due amount was $42,112,093.53.

18. Section 9.4 of the Interconnection Attachment to the GNAPs/Verizon MA Interconnection Agreement provides that "[c]harges due to the billing Party that are not paid by the Due Date, shall be subject to a late payment charge. The late payment charge shall be in an amount specified by the billing Party which shall not exceed a rate of one-and-one-half percent (1.5%) over the overdue amount (including any unpaid previously billed late payment charges) per month." Verizon MA sent its initial invoice to GNAPs on January 19, 2004. Since GNAPs has not paid any of Verizon MA's invoices for access charges for V/FX traffic, in addition to the overdue invoiced amounts, GNAPs owes Verizon MA applicable late payment charges.

## COUNT I
### (Breach of Contract)

19. Verizon MA incorporates and realleges the allegations in paragraphs 1-18 of its Counterclaim.

20. Under the terms of the GNAPs/Verizon MA Interconnection Agreement GNAPs owes Verizon MA $ 42,112,093.53, plus applicable late payment charges, for originating access charges for V/FX Traffic delivered by Verizon MA to GNAPs.

21. Verizon MA has demanded payment from GNAPs for the overdue amounts.

22. Despite Verizon MA's demand for payment, GNAPs has failed to pay the overdue amounts.

23. GNAPs failure to may the requested payment constitutes a breach of the terms of the GNAPs/Verizon MA Interconnection Agreement.

24. Verizon MA has suffered damages in the amount of outstanding overdue amounts totaling $ 42,112,093.53, plus applicable late payment charges.

## COUNT II
### (Declaratory Relief, 28 U.S.C. § 2201)

25. Verizon MA incorporates and realleges the allegations in paragraphs 1-18 of its Counterclaim.

26. A controversy exists between Verizon MA and GNAPs regarding its payment obligations with respect to the overdue amounts. This controversy will continue as Verizon MA continues to originate V/FX traffic to GNAPs' customers and as long as GNAPs continues to refuse to pay Verizon MA the amounts due pursuant to the GNAPs/Verizon MA Interconnection Agreement and applicable law.

27. Verizon MA seeks a declaratory judgment or decree under 28 U.S.C. § 2201 declaring the respective rights and obligations of the parties, and determining that GNAPs must pay Verizon MA the overdue amounts described herein.

WHEREFORE, Verizon MA respectfully request that the Court:

(1) Enter a declaratory judgment or decree pursuant to 28 U.S.C. § 2201, that GNAPs must pay Verizon MA for applicable access charges for V/FX traffic under the terms of the GNAPs/Verizon Interconnection Agreement; and

(2) Enter judgment in Verizon MA's favor in the full amount of all overdue amounts, plus applicable late payment charges, attorneys' fees, and costs.

(3) Enter such other relief that is just and reasonable.

VERIZON NEW ENGLAND INC., d/b/a
VERIZON MASSACHUSETTS

By its attorneys,

*/s/ Keefe B. Clemons*

Bruce P. Beausejour (BBO# 034840)
Keefe B. Clemons (BBO# 635906)
185 Franklin Street, 13th Floor
Boston, MA 02110-1585
(617) 743-6744

Dated: March 14, 2005.

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March, 2005, I caused a copy of the foregoing Answer and Counterclaim to be served by U.S. mail to all of the counsel of record listed below, addressed as follows:

William J. Rooney, Esq.
Jeffrey C. Melick, Esq.
Global NAPs Legal Department
89 Access Road
Suite B
Norwood, MA 02062

*/s/ Keefe B. Clemons*