UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NOS.  02-12489-RWZ
05-10079-RWZ

GLOBAL NAPS, INC.

v.

VERIZON NEW ENGLAND, INC.

<u>MEMORANDUM OF DECISION</u>

September 11, 2006

ZOBEL, D.J.

Currently pending before me are two motions filed by defendant Verizon New

England, Inc. ("Verizon") against plaintiff Global NAPS, Inc. ("Global") in Civil Action

No. 05-10079, one of a set of related cases between the parties which has been

consolidated with Civil Action No. 02-12489.  Global's complaint seeks to "recover

payment of intercarrier compensation for terminating telephone calls from Verizon's

customers to Global's ISP customers after October 8, 2004."  (Compl. ¶ 11).

Accordingly, Global seeks damages for amounts it claims it is owed under federal law,

as well as a declaration that Verizon must pay Global such amounts going forward.

Verizon has filed an answer and counterclaim, in which it responds that Global owes it

$42 million in charges pursuant to the Interconnection Agreement between the parties.

(Counterclaim ¶ 1).  Accordingly, Verizon claims breach of contract and further seeks

declaratory relief.  Verizon has moved for judgment on the pleadings on Global's

complaint.  It also seeks expedited prejudgment attachment and attachment by trustee

process of Global funds that would be used to satisfy any judgment in Verizon's favor

on its counterclaim.

I.    <u>Motion for Judgment on the Pleadings</u>

Because the purpose of the Telecommunications Act of 1996 ("the Act")[1] was to end local telephone monopolies, Congress required companies with historic local monopolies, known as incumbent local exchange carriers ("ILECs"), to allow competitive local exchange carriers ("CLECs") to interconnect with their networks.  <u>See Global NAPS, Inc. v. Verizon New England, Inc.</u>, 444 F.3d 59, 61-62 (1st Cir. 2006) ("<u>Global II</u>").  CLECs, such as Global, and ILECs, such as Verizon, must transport and deliver calls to each other.  Compensation for the costs of transporting entirely local or intrastate telecommunications traffic is generally paid by the originating carrier.  <u>Id.</u> at 63.  Global's customers are internet service providers ("ISPs").  As the First Circuit noted in an earlier iteration of this litigation, the treatment of ISP-bound traffic has recently caused controversy.  First, Global is able to assign its customers virtual numbers that makes it seem like the customer is located within the local calling area, though the customer may actually be located elsewhere.  <u>Id.</u> at 64.  Thus, the compensation regime that applies to local calls, and which requires the originating carrier to compensate the receiving carrier, applies to calls received by Global's ISP customers, though they may not actually be within the local calling area.  <u>Id.</u>  Second, Global is usually the receiving rather than originating carrier because calls to ISPs tend to be long and tend to "go exclusively ... to the ISP."  <u>Id.</u>  For these two reasons,

---

[1]Pub. L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of 47 U.S.C.).

Global, as the receiving carrier, "stands to gain a windfall" under the intrastate compensation regime.  Id.

In April 2001, the Federal Communications Commission ("FCC") issued what is commonly known as the ISP Remand Order.[2]  The ISP Remand Order established a compensation regime for ISP-bound calls, such as those made by Verizon customers to Global's ISP customers.  First, the FCC set a rate cap, which established a declining ceiling on the rate that originating carriers like Verizon would have to pay for calls delivered to ISPs, and which was to take effect on the Order's effective date.  (ISP Remand Order ¶ 78).  But the FCC also explicitly stated that "because the rates set forth above are caps on intercarrier compensation, they have no effect to the extent that states have ordered LECs to exchange ISP-bound traffic either at rates below the caps we adopt here or on a bill and keep basis (or otherwise have not required payment of compensation for this traffic)."  (Id. ¶ 80 (emphasis added)).  There is no dispute that at the time of the ISP Remand Order, the Massachusetts Department of Telecommunications and Energy ("DTE") had reached the "settled conclusion that reciprocal compensation was not required" for any ISP-bound calls that Verizon delivered to Global.  Global NAPS, Inc. v. Mass. Dep't of Telecomms. & Energy, 427 F.3d 34, 45 (1st Cir. 2005) ("Global I"); see Order, MCI WorldCom, Inc. v. New England Tel. & Tel. Co., D.T.E. 97-116-C, 1999 WL 634357 (Mass. D.T.E. May 26, 1999) ("May 26, 1999 DTE Order"); Order, MCI WorldCom, Inc. v. New England Tel. & Tel. Co.,

---

[2]Order on Remand and Report and Order, In re: Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 16 F.C.C.R. 9151 (2001).

D.T.E. 97-116-F, 2001 WL 1448563, at *9 (Mass. D.T.E. Aug. 29, 2001) ("August 29, 2001 DTE Order"); <u>MCI WorldCom Commc'ns, Inc. v. Mass. Dep't of Telecomms. & Energy</u>, 442 Mass. 103 (2004).

The ISP Remand Order further stated that it did "not preempt any state commission decision regarding compensation for ISP-bound traffic for the period prior to the effective date of the interim regime we adopt here." However, the FCC clarified that "[b]ecause we now exercise our authority under section 201 to determine the appropriate intercarrier compensation for ISP-bound traffic, . . . state commissions will no longer have authority to address this issue." (ISP Remand Order ¶ 82). In <u>Global II</u>, the First Circuit analyzed this provision and determined that the ISP Remand Order did not preempt state regulation of all ISP-bound traffic, but rather preempted only state regulation of local ISP-bound traffic. 444 F.3d at 73.[3]

In October 2004, the FCC issued an order in response to a petition for forbearance from enforcement of the ISP Remand Order, referred to as the Core Forbearance Order.[4] In that order, the FCC held that it would enforce certain aspects of the ISP Remand Order. Specifically, the FCC declined to forbear from enforcing "the rate caps and mirroring rule" set forth in the ISP Remand Order, but granted

---

[3]Accordingly, Global's assertion that the ISP Remand Order "preempted the regulation of intercarrier compensation for ISP-bound calls" (Compl. ¶ 12) is incorrect to the extent that it includes non-local ISP-bound calls within the scope of preemption.

[4]Order, Petition of Core Communications, Inc. for Forbearance Under 47 U.S.C. § 160(c) from Application of the ISP Remand Order, 19 F.C.C.R. 20179 (2004) ("Core Forbearance Order").

forbearance from enforcement of "the growth caps and new markets rule." (Core Forbearance Order ¶¶ 15, 18, 20-21, 23, 25).

In November 2004, Global began sending Verizon invoices for calls originated by Verizon's customers and delivered to Global's ISP customers. Verizon refused to pay, and Global filed the instant action. The complaint asserts that the Core Forbearance Order entitles "all carriers . . . to be paid the federal rate for terminating all ISP-bound traffic." (Compl. ¶ 21). Accordingly, Global seeks payment at the rate of $0.0007 per minute—the federal rate cap—for all calls received from Verizon and delivered to ISP customers after October 8, 2004, the effective date of the Core Forbearance Order. (Id. ¶ 23).

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed under "essentially the same" substantive standard applied to motions for dismissal under Fed. R. Civ P. 12(b)(6). See, e.g., Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005). The court accepts the complaint's factual assertions as true and draws every reasonable inference in the plaintiff's favor. Id. Judgment is appropriate only if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (internal quotation marks omitted).

Although it seems to be an issue beyond dispute, the parties still apparently disagree as to the effect of the ISP Remand Order upon DTE's regulations. As a threshold matter, therefore, I must determine whether the ISP Remand Order purported to apply the rate caps set forth in ¶ 78 within Massachusetts. Verizon argues—based

on ¶ 80—that the rate caps set forth in the ISP Remand Order never applied within Massachusetts.  This was the conclusion reached by the DTE and affirmed by the Massachusetts Supreme Judicial Court.  See Aug. 29, 2001 DTE Order; MCI WorldCom Commc'ns, Inc., 442 Mass. 103.  Global nevertheless disputes this reading of the ISP Remand Order and—at the motion hearing—went so far as to contend that the ISP Remand Order exempted states such as Massachusetts from the rate caps only for the period prior to 2001 (i.e., prior to effective date of interim regime).  This argument is clearly without merit.  The Remand Order implemented interim compensation rates from the effective date going forward; it did not implement the rate caps retroactively.  Thus, it would have made little sense for the Remand Order to have exempted certain states, like Massachusetts, from the rate caps retroactively.  Instead, the ISP Remand Order imposes the rate caps "[b]eginning on the effective date of this Order" (¶ 78), except in states—such as Massachusetts—that have already ordered carriers to exchange ISP-bound traffic below rate caps.  In those states, the rate caps do not take effect on the effective date.  Global's reading of ¶ 80 of the ISP Remand Order is therefore insupportable.

The crux of Global's claim is that the Core Forbearance Order suddenly entitled it to seek compensation at the rate of $0.0007 per minute.  (E.g., Compl. ¶ 24).  Thus, it asserts that the Core Forbearance Order entitles "all carriers . . . to be paid the federal rate for terminating all ISP-bound traffic."  (Id. ¶ 21).  There are several problems with Global's position.  First, there is no such thing as an "applicable federal rate."  The ISP Remand Order establishes a "rate cap," not an "applicable federal rate."  The FCC

6

explicitly referred to the rate caps as "ceiling[s]," indicating that they were an upper

limit, below which any rate was permissible. (ISP Remand Order ¶ 78). Second, even

if I accept Global's position and assume that the $0.0007 rate cap established in the

ISP Remand Order in fact functions as an "applicable federal rate," nothing in the Core

Forbearance Order changes enforcement of the rate cap. Instead, enforcement of the

rate cap remains the same under the Core Forbearance Order as it originally did under

the ISP Remand Order. (Core Forbearance Order ¶ 1 (denying petition to forbear from

enforcing ISP Remand Order with respect to rate caps)). And, as explained above,

under the ISP Remand Order as originally implemented, the rate cap did not apply

within Massachusetts. Accordingly, under the Core Forbearance Order, as under the

original ISP Remand Order, the rate cap does not apply within Massachusetts.

What the FCC did agree to forbear from enforcing were the growth caps and

new market rule. (Id.). Neither of these changes, however, affected the compensation

for ISP traffic within Massachusetts. The growth caps imposed in the ISP Remand

Order limited the "total ISP-bound minutes" for which a carrier could receive

compensation. (Id. ¶ 7). By removing the growth cap, the Core Forbearance Order

allowed carriers to seek compensation for additional minutes. Because compensation

is determined by multiplying minutes by a rate per minute, however, and because the

rate per minute in Massachusetts is zero, the removal of the growth cap in the Core

Forbearance Order had no effect on Global's entitlement (or lack thereof) to intercarrier

compensation for ISP traffic. As for the new market rule, it held that any carriers not

exchanging traffic pursuant to an interconnection agreement as of the time of the ISP

Remand Order should exchange ISP traffic on a bill-and-keep basis rather than under any intercarrier compensation regime.  (ISP Remand Order ¶ 81).  Again, the new market rule—and its effective reversal in the Core Forbearance Order—could not have affected Global's right to compensation from Verizon for ISP traffic because within Massachusetts Verizon did not owe Global any such compensation.

Perhaps recognizing these weaknesses in its complaint, Global argues in its opposition that it seeks compensation not on the basis of the Core Forbearance Order or the federal rate cap set forth in the ISP Remand Order, but rather on the basis of the Interconnection Agreement between the parties.  Specifically, Global contends (1) that the ISP Remand Order prevented it from implementing the parties' rate agreement, as set forth in § 8.1 of the Agreement, and (2) that the Core Forbearance Order, by halting enforcement of the ISP Remand Order, allowed Global to enforce the parties' contractual rate.  Global's sudden reliance on the Interconnection Agreement is unpersuasive.  The Agreement is mentioned nowhere in its complaint, which instead repeatedly refers to "the applicable federal rate" and the Core Forbearance Order as the legal basis for its claim.  Nor does the complaint anywhere assert breach of contract or refer to a contractual right.  In fact, Global itself—in opposing consolidation of this action with Civil Action No. 02-12489—unequivocally asserted that the charges for which it was claiming compensation in this case were "not provided for in any interconnection agreement," but were instead "required by federal law."  (Docket #48 at 2).

In any event, Global's reference to the Interconnection Agreement is unavailing. In Section 8.1 of the Interconnection Agreement, the parties agree that "intercarrier compensation . . . shall be governed by the terms of the FCC Internet Order and other applicable FCC orders and FCC regulations."  The Agreement's glossary in turn defines the FCC Internet Order as the ISP Remand Order.  As explained above, however, under the ISP Remand Order, the rate caps have "no effect" in Massachusetts and instead the DTE's regulations—which set the compensation Verizon owes to Global at zero—govern.  Thus, under the Interconnection Agreement itself, Global's claim fails.  Global also contends that the Core Forbearance Order emphasizes the importance of a "unified compensation regime."  (Core Forbearance Order ¶ 20).  According to Global, this policy is "utterly defeated if some states allow no compensation for Internet traffic and the others employ the FCC rate."  (Global's Opp. 5).  But Global's argument ignores the fact that the FCC's decision to exempt states like Massachusetts was based on its conclusion that such states had already adopted the bill-and-keep or lower rate cap arrangements toward which the FCC ultimately meant to steer all states.  Thus, the reason why the FCC rate cap was never effective in Massachusetts was precisely because the FCC expected other states would eventually adopt a similar compensation regime, thereby satisfying the Commission's concern with a  "unified compensation regime."

Finally, Global suggests that Verizon's position implicitly undermines its own counterclaim.  This argument, whatever merit it may have with respect to Verizon's counterclaim, does not affect the analysis of Global's complaint.

9

Because Global is not entitled to compensation under the Core Forbearance Order, the ISP Remand Order, or the Interconnection Agreement, Verizon's motion for judgment on the pleadings is allowed.

II.    Motion for Prejudgment Attachment and Attachment by Trustee Process

Verizon's counterclaim in Civil Action No. 05-10079 seeks damages for unpaid access charges and late payment charges that Global allegedly owes Verizon for non-local ISP-bound traffic. In prior stages of this litigation, Global disputed these charges and lost. Specifically, in the consolidated Civil Action No. 02-12489, Global challenged the DTE's arbitration order, which found in Verizon's favor and required Global to pay such charges. See Global II, 444 F.3d at 61. This court granted summary judgment in favor of Verizon, and the First Circuit affirmed. Id. The First Circuit expressly held that the "DTE [is] free to impose [such] access charges . . . under state law." Id. In the instant motion, Verizon seeks prejudgment attachment and attachment by trustee process of the approximately $73 million it says Global owes. Under Fed. R. Civ. P. 64, I apply the law of the forum state in considering requests for prejudgment remedies. Under Mass. R. Civ. P. 4.1(c), which governs prejudgment attachment, Verizon must demonstrate "that there is a reasonable likelihood that [it] will recover judgment, including interests and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by [Global] to be available to satisfy the judgment." Where, as here, the defendant lacks liability insurance, "the only issues before the Court are whether [Verizon] is reasonably likely to succeed on the merits and, if so, the extent of [its] monetary recovery." Rodriguez v. Montalvo, 337 F.

Supp. 2d 212, 215 (D. Mass. 2004).  The standard applicable to Verizon's request for attachment by trustee process is essentially the same.[5]  See Mass. R. Civ. P. 4.2(c) (authorizing attachment by trustee process "upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interests and costs, in an amount equal to or greater than the amount of the attachment").

Verizon has sufficiently established a likelihood of success on the merits by prevailing at earlier stages in this litigation.  By virtue of the DTE's arbitration order, and the decisions of this court and the First Circuit, Global is liable for access charges for non-local ISP-bound traffic.  See Global II, 444 F.3d at 61.  Global concedes its liability. (Global's Opp. 10).  Accordingly, the only question before the court is whether Verizon has established a reasonable likelihood that it is entitled to the amount of damages—approximately $73 million—that it seeks.  On this point, Global raises a number of objections to Verizon's calculation.  Because none of these objections have merit, however, the motion is allowed.

Verizon calculated this amount by multiplying number of minutes by the access charge rate.  Verizon determined the number of minutes by using Global's own monthly bills to Verizon and by relying on Global's representation that all of those calls were the type of call—referred to as Virtual NXX calls—to which access charges apply.  Verizon determined the applicable rate by averaging its per minute revenue for all switched access service.  (See McKinley Decl.).  Global first disputes this amount by arguing that

---

[5]Trustee process attachment is "a different Massachusetts device to freeze interests held by a third party but belonging to the defendant."  Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 30 n.1 (1st Cir. 2005).

Verizon's calculation "completely ignore[s] Global's offsetting claims," i.e., the claims for intercarrier compensation set forth in Global's complaint. (Id. at 8). Because Verizon has prevailed on its Rule 12(c) motion as to these claims, however, no offset is due, and the argument fails.

Second, Global disputes the rates used by Verizon in its calculation. Verizon employed "a rate equal to the average rate all standard switched access customers in Massachusetts paid" during the relevant periods. (McKinley Decl. ¶ 17). Global argues that Verizon should instead have applied a rate of $0.0007 pursuant to § 8.1 of the Interconnection Agreement. Section 8.1 states that "a Party shall not be obligated to pay any intercarrier compensation for Internet Traffic that is in excess of the intercarrier compensation for Internet Traffic . . . required . . . under the FCC Internet Order." (Fox Aff., Ex. A, § 8.1). Global contends that access charges fall within the scope of "intercarrier compensation," and are thus governed by § 8.1. Global further contends that the calls for which Verizon seeks to impose access charges qualify as "Internet Traffic." Thus, Global asserts that, under § 8.1, the rate imposed cannot exceed any rates set forth in the FCC Internet Order, which is the ISP Remand Order. Under ¶ 78 of the ISP Remand Order, intercarrier compensation is capped at $0.0007 per minute during the relevant period. Accordingly, Global maintains that Verizon may not apply a higher rate.

For two reasons, this line of argument is unpersuasive. First, in its previous effort to obtain a temporary restraining order, Global asserted that the access charges to which it was subject under the DTE's arbitration order were prohibitive. Global

12

specifically complained that under the DTE's arbitration order, it would owe access rates of $0.00525 per minute. (Global's Mem. in Supp. of Mot. for TRO, Apr. 29, 2005, at 14). Global sought a preliminary injunction on grounds that enforcement of such access charges—at a rate much higher than the $0.0007 it currently advocates—would be devastating. Having previously argued that under the arbitration order, as implemented by the Interconnection Agreement, the applicable rate is $0.00525, it is wholly inconsistent for Global now to argue that the Agreement only imposes a rate of $0.0007. Global's inability to reconcile this inconsistency at the motion hearing suggests that its view of the appropriate rate turns less on the applicable law and contractual provisions, than on its continually evolving litigation strategy. (See Tr. July 20, 2006 Hearing, at 52-53). To that extent, its inconsistency with regard to the applicable rate undermines its current position. Second, Global's argument fails on the merits. As explained above, in connection with Verizon's Rule 12(c) motion, the ISP Remand Order—and the rate caps established in ¶ 78—do not apply within Massachusetts. Moreover, the First Circuit has already rejected any argument that the FCC's ISP Remand Order "preempts state regulation of access charges for the non-local ISP-bound traffic at issue here." Global II, 444 F.3d at 72.

The methodology employed by Verizon in determining the appropriate rate is reasonable. Most Verizon customers are billed for switched access service based upon the precise mix of switching services they use. (McKinley Decl. ¶ 15). Because it is impossible to determine the specific mix of switching and transport that Global uses, Verizon instead charged Global a rate equal to the average paid by Verizon customers

for all switched access services.  (Id. ¶ 17).  Indeed, because Global has only two

"hand-off points" in Massachusetts, whereas most switched access customers have

several, Global likely owes a higher rate than other customers because it likely uses a

higher transport mileage than the average customer.  (Id. ¶ 22).  Because Global has

offered no other challenge to Verizon's applied rate, and because Verizon's rate

calculation methodology was reasonable, Global's objection to application of the rate

fails.

In its opposition memorandum, Global also challenges the number of minutes

used by Verizon in computing damages.  At the motion hearing on July 20, 2006,

however, Global accepted Verizon's determination of the appropriate number of

minutes, with the exception of a relatively small fraction of the total minutes, which

Global asserts should be excluded as interstate traffic.  (Tr. July 20, 2006 Hearing, at

55-60).  Even Global concedes, however, that excluding these minutes would only

reduce the total amount owed—at Verizon's applicable rate—by $3 million.  Because

Verizon seeks attachment of approximately $73 million, and because Global concedes

that—under the rate imposed by Verizon and accepted by the court—it owes that

amount less $3 million, Verizon has established a reasonable likelihood that it is

entitled to damages of at least $70 million.  It has therefore satisfied the standard set

forth in Mass. R. Civ. P. 4.1(c) and 4.2(c), and is entitled to prejudgment attachment

and attachment by trustee process in that amount.[6]

---

[6]In addition, prejudgment remedies may be particularly appropriate in this case, since the record indicates that Global, its principals, and affiliated entities may have attempted to transfer or otherwise conceal Global's assets to avoid execution of any

III.    Conclusion

Accordingly, Verizon's motion for judgment on the pleadings on Global's complaint in Civil Action No. 05-10079 (Docket #157 in Civil Action No. 02-12489) is allowed.  The parties shall proceed with the briefing schedule previously established with respect to Verizon's counterclaim.

Verizon's motion for expedited prejudgment attachment and attachment by trustee process (#149) is allowed in the amount of $70 million.

In addition, Global's motions for leave to file (##99 and 151) are denied as moot, as is Verizon's motion for leave to file (#128).  Verizon's motion for additional security (#116) is moot in light of the court's November 9, 2005 order.  Verizon's motion for leave to file (#162) is allowed.  Global's motion for leave to appear pro hac vice (#176) is also allowed.

Verizon's stipulated motion for entry of a protective order (#166) is allowed.


_September 11, 2006___              /s/Rya W. Zobel_____
         DATE                      RYA W. ZOBEL
                                   UNITED STATES DISTRICT JUDGE

---

future judgment against it.  Cf. Rodriguez, 337 F. Supp. 2d at 217 (prejudgment attachment appropriate where defendant may have encumbered assets after commencement of litigation).  Global hotly disputes Verizon's assertions, but Verizon's submissions at least raise a question as to the motive behind, and propriety of, certain of Global's recent transactions.